## 74019. MILLER v. THE STATE.
### (359 SE2d 683)

CARLEY, Judge.

Appellant was indicted for trafficking in cocaine. After a bench trial, he was found guilty. Appellant appeals from the judgment of conviction and sentence entered on the trial court's finding of guilt.

In related enumerations, appellant's sole contention on appeal is that his motion to suppress was erroneously denied by the trial court. The search of appellant was conducted pursuant to his arrest at Hartsfield International Airport. The evidence adduced at the hearing on appellant's motion to suppress authorized a finding of the existence of factual circumstances which are very similar to those which existed in *Reid v. State*, 179 Ga. App. 144 (345 SE2d 635) (1986). In that case, we held that the arrest and the search incident thereto were valid. Of course, there are some factual differences between the case sub judice and *Reid*, and, indeed, rarely do we have two cases on all fours factually. Thus, the issue for resolution in this case is whether those factual differences are such as to require a different legal result from that which was reached in *Reid*.

Here, as in *Reid*, it is undisputed that appellant exhibited suspicious "leg bulges" when he exited the plane from Miami, a known source city for the distribution of drugs. As in *Reid*, appellant's suspicious "leg bulges" attracted the immediate attention of two agents of the Federal Drug Enforcement Administration, Agents Markonni and Johnson. As was likewise true in *Reid*, appellant was placed under surveillance by both agents and was subsequently confronted, questioned, arrested and searched by Agent Markonni. However, unlike *Reid*, Agent Markonni did not testify at the hearing on appellant's motion to suppress. Only Agent Johnson, who had observed and overheard all that transpired between Agent Markonni and appellant, testified. Agent Johnson testified that his own personal experience with

the investigation of suspicious "leg bulges" like those exhibited by appellant was such that 95% resulted in the discovery of illegal drugs. Accordingly, unlike *Reid*, there is no evidence *in this case* that Agent Markonni had similar personal experiences with the investigation of suspicious "leg bulges" and, therefore, the experience of Agent Markonni is *not* a factor which enters into the existence of probable cause for the arrest of appellant. But, for purposes of comparison only, see *Reid v. State*, supra and the numerous "Markonni" federal cases cited therein. However, it is undisputed that Agent Johnson, whose personal experience *is* of record in this case, discussed appellant's suspicious "leg bulges" with Agent Markonni prior to the initial confrontation and subsequent arrest. "Information obtained by police officers engaged in an investigation may be used by another officer common to that investigation as a reliable basis for the establishment of probable cause. [Cits.]" *Parker v. State*, 161 Ga. App. 37, 39 (3) (288 SE2d 852) (1982). Accordingly, it strains credibility to opine that it was not a fact within Agent Markonni's knowledge at the time of the arrest that the probable explanation for appellant's suspicious "leg bulges" was that they constituted two illegal caches of drugs. " '[T]he unusual size and shape of the bulge[s] and, given [their] unusual size and shape, [their] abnormal position on [appellant's] person alone provided not only reasonable suspicion but also probable cause for [his] arrest.' [Cit.]" *Reid v. State*, supra at 146-147.

It is also true that, unlike in *Reid*, appellant did not voluntarily lift his trouser legs. However, in this case, the agents immediately noticed that appellant had abnormally large bulges in *both* boots, as opposed to just one in *Reid*. Furthermore, as in *Reid*, the appellant answered Agent Markonni's question in the negative when asked if he had anything in his boots other than his feet and socks. Based upon the agents' observations, this answer was obviously untrue. Under *Reid*, probable cause existed for the arrest of appellant and, therefore, the search incident to his arrest was valid. Appellant's "false response to the inquiry about the object[s] in his [boots], coupled with [the agents'] observation and experience, provided the probable cause required for [appellant's] warrantless arrest. Accordingly, the search incident to that arrest was not violative of the Fourth and Fourteenth Amendments and the fruits of that search were properly considered by the trial court in rendering its decision." *Reid v. State*, supra at 148.

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., Pope and Beasley, JJ., concur. Benham, J., concurs specially. Banke, P. J., and Sognier, J., dissent.*

BENHAM, Judge, concurring specially.

In the original decision, I joined Presiding Judge Banke along

with Judge Sognier in dissenting, mainly due to my reservation concerning the majority's reliance upon *Reid v. State*, 179 Ga. App. 144 (345 SE2d 635) (1986). However, after a more careful analysis of the facts on rehearing, I now specially concur in the judgment of the majority, and I write separately to further develop the facts.

While there are striking factual similarities between the case sub judice and *Reid v. State*, there is one note-worthy difference: *Reid* was a leg-bulge-consent case and this case is not. Therefore, *Reid* is a weak peg on which to hang the results of this case. However, the facts here provide a more compelling basis for the result reached by the majority. My concurrence is bottomed on the very detailed evidence given here which is sufficient to meet the probable cause requirement. The legal requirements of the drug courier profile are sufficiently outlined in *Reid v. State* and a host of other cases too numerous to mention. When this profile is superimposed on the facts of this case, we see that the fact finder was authorized to find significant similarities: appellant boarded the plane from a known drug source city after having purchased his ticket with cash. He was the last individual to leave the plane, bypassing the service representative and going directly to the monitor. He wore tight blue jeans and his boots were abnormally large to the extent that they noticeably stuck out along the calves of his legs. He walked around aimlessly in the airport with a small tote bag which appeared to be completely empty, and he had no baggage claims. When approached by officers, his nervousness was evident from his profuse perspiration, shaking, and heavy breathing. All of this conduct, in addition to that outlined in the majority opinion, was consistent both with the drug courier profile and with law enforcement experience which showed that that combination of facts usually indicated drug activity. Therefore, the totality of the circumstances was sufficient not only for a *Terry* stop but also for a probable cause arrest.

BANKE, Presiding Judge, dissenting.

At the time of the appellant's arrest, the sum total of the incriminating information known to the arresting officers was as follows: (1) The appellant had arrived at the airport from Miami, which was described as a known "source city" for the distribution of illegal drugs; (2) he had abnormally large boots, one of which protruded more than the other along his calf; (3) he had purchased a one-way airline ticket with cash; (4) he had no checked baggage and carried only a small tote bag with few contents; (5) he had appeared increasingly nervous during the confrontation with Markonni, and (6) he had denied that anything was concealed in his boots yet refused to lift his trouser leg to enable the officers to verify this.

While this information may have been sufficient to give rise to an

articulable suspicion that the appellant was transporting contraband, I do not consider it sufficient to establish probable cause for his arrest. As in *Reid v. Georgia*, 448 U. S. 438, 441 (100 SC 2752, 65 LE2d 890), "[t]he other circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." See also *State v. Smith*, 164 Ga. App. 142 (2) (296 SE2d 141) (1982); *Pullano v. State*, 169 Ga. App. 377 (312 SE2d 857) (1983); *Del Rio v. State*, 171 Ga. App. 381 (1) (320 SE2d 236) (1984).

Certainly, the recent case of *Reid v. State*, 179 Ga. App. 144 (345 SE2d 635) (1986), involved factual circumstances which were similar in many respects to those in the present case; however, it also involved an important additional element which is missing from the present case. In *Reid*, we held that probable cause existed for the arrest of an airport suspect who, after having previously denied to the arresting officer that he was carrying anything concealed in his sock, voluntarily lifted his trouser leg to reveal a cylinderical object protruding from the sock — an object which the arresting officer described as being " 'consistent with a bag containing controlled substances that I have seen many times.' " Id. at 145. While the *Reid* court understandably found probable cause for the suspect's arrest under these circumstances, it did not, as the majority in the present case implies, suggest that the mere presence of a "suspicious bulge" in a traveler's clothing, coupled with a refusal on the part of the traveler to explain the bulge to the satisfaction of police officers, would itself constitute probable cause for the traveler's arrest.

In the present case, Agent Johnson conceded that he never actually saw the package containing the contraband until *after* Miller's arrest and that his observations up to that point were consistent with the possibility that the appellant might be transporting such lawful items as cigarettes or currency inside his boots. While the existence of probable cause in *Reid* was clearly premised on observations which took place prior to the arrest, the existence of probable cause in the present case was established by observations which were not possible until after the arrest had already been made. For this reason, I would hold that the arrest was unlawful and that the search incident to it was consequently violative of the appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED JUNE 18, 1987 —
REHEARING DENIED JULY 15, 1987 — ▮▮▮▮▮▮▮▮▮▮

*Jerome L. Froelich, Jr.*, for appellant.

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.